UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

WILLIAM ALLEN MILLER,            )
                                 )
            Plaintiff,            )
                                 )
      vs.                        )      Case No. 2:11-cv-262-JMS-DKL
                                 )
H. J. MARBERRY, *et al.*,        )
                                 )
            Defendants.          )

**Entry Granting Defendants' Motion for Summary
Judgment and Directing Entry of Final Judgment**

The Court has before it the defendants' motion for summary judgment, which is fully briefed. For the reasons explained in this Entry, the motion for summary judgment must be granted.

### I. Parties and Nature of the Action

William Miller is the plaintiff. Miller is an inmate at the Federal Correctional Complex in Terre Haute, Indiana ("the FCC") and alleges that he suffered injuries because of the misconduct of the defendants in failing to honor his assignment to a bottom bunk. Specifically, Mr. Miller claims that his Eighth Amendment rights were violated by Warden Marberry and Officer Rogers when Miller was forced to sleep on a top bunk, despite having a lower bunk restriction due to a brain tumor. The action is brought pursuant to the theory recognized in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971).

There are three defendants, these being (1) former FCC Warden H.J. Marberry, (2) Correctional Officer Gary Rogers, and (3) Nurse Trisa Haddix. Each defendant is employed by the Federal Bureau of Prisons ("BOP").

Based on the ruling of August 22, 2013, the action is proceeding only as to the claim which reasonably arises from the events detailed in Administrative Remedy Request 610075. The full text of Administrative Remedy Request 610075 is the following:

> On 1/6/09 I was put in SHU for investigation. I am a disabled man with a brain tumor, and had previous neck surgery and was on a prescribed narcotic (percoset). I had several medical needs, namely a cane, special shoes, lwr.bunk etc. When I was put in the SHU by C/O Nichols I wasn't given these items. On 2/14/09 I fell out of bed breaking my back, forcing me to have surgery. I fell from an upper bunk, which staff was deliberately indifferent to me getting a lower bunk as well as my other special items (see above). My cell mate refused to let me have a lower bunk. I request a complete investigation to this 8th amendment violation (deliberate indifference) to my rights. Administrative remedy is delayed due to no knowledge until now of constitutional violation.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. *Id.*

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing

that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322.

The primary purpose of summary judgment is to isolate and dispose of factually unsupported claims." *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). "As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted).

### III. Uncontested Material Facts

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Miller as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Miller was confined at the FCC between December 18, 2007, and October 20, 2010.

Officer Rogers has been employed with the BOP since July 23, 2006.

There is a particular housing area at the FCC known as the SHU. "SENTRY" is the BOP's computer database which collects, maintains, and tracks critical inmate information, including inmate location, medical history, behavior history, and release data. SENTRY includes data concerning bunk assignments and concerning medically authorized or medically prescribed bunk assignment restrictions.

According to Officer Rogers, the SENTRY database contains the following information:

- Miller was housed in the SHU from January 6, 2009, through October 23, 2009.

- Miller was received in the SHU on January 6, 2009. On January 6, 2009, Miller was initially given a bottom bunk. However, he was moved to another cell on that same date. The new cell assignment was for a top bunk. Miller was also given new cell and bunk assignments on January 11, 2009 and January 21, 2009.

- Miller remained in a top bunk assignment from January 6, 2009, through October 23, 2009, with the exception that on one day, May 22, 2009, he was assigned to a lower bunk.

When a lower bunk assignment is medically directed, a notation to that effect originates with the Health Services Department and is entered into the SENTRY database. This is shown by the affidavit of Andrew Rupska, the FCC Assistant Health Services Administrator, and on page 20 and page 27 of Miller's own deposition. No such medical restriction or notation appeared in the SENTRY database pertaining to Miller's authorization for a lower bunk while he was assigned to the SHU. Nonetheless, Officer Rogers' practice was to house an inmate such as Miller in the proper cell according to any conditions assigned by the Health Services Department, including a medical restriction regarding bunk assignment. Miller testifies on page 40 of his deposition that Nurse Haddix had no involvement in the bunk assignment claim which is identified in Part I of this Entry.

On February 14, 2009, Miller fell from an upper bunk in his SHU cell. He suffered substantial injury from this fall. As noted above, at the time of Miller's assignment to the SHU, to and including the time of his fall on February 14, 2009, the Health Services Department of the FCC had not issued a lower bunk restriction for Miller. Such a restriction was issued for a 1-year period on December 1, 2009.

At the time relevant to Miller's claim, Officer Rogers worked the third shift as the SHU #1 Officer. In that role, he worked the floor with numbers 3-6. The SHU #2 officer worked in the security bubble and had access to a computer on which the officer would perform computer and

administrative work. This included making bunk assignments for SHU inmates in conformity with, among other things, restrictions directed by Health Services. During that time, Officer Rogers relied upon the SHU #2 Officer to check all appropriate computer systems to determine if an inmate who asserted that he had a bunk restriction actually had such a restriction.

If an inmate had a lower bunk restriction, or there was a change in circumstances, including a change in bunk restrictions, the inmate would need to notify SHU staff so they could verify the information and make appropriate assignments or changes. There is a SHU #2 Officer on each shift available to make those bunk assignments or changes.

Also at the time relevant to Miller's claim, Miller believed that the SENTRY database should have showed him with a lower bunk restriction because of action he witnessed Dr. Webster take during an appointment. On the other hand, during the same time period, Miller was aware that the SENTRY database did *not* show him to have a lower bunk restriction from the Health Services Department. There came a point in time when Warden Marberry was making rounds in the SHU and Miller spoke to her about his need for a lower bunk restriction. She did not reply, nor did she even stay in the vicinity until Miller had said his piece. Warden Marberry, however, as a high level administrator, did not make clinical judgments and deferred such matters to the staff responsible for them.

### IV. Discussion

*Bivens* creates a remedy, not a substantive right. *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir. 1995) (noting that "the effect of *Bivens* was to create a remedy against federal officers acting under color of federal law that was analogous to the Section 1983 action against state officials"). Thus, to state a *Bivens* claim the plaintiff must allege a violation of the United States Constitution or a federal statute. *Goulding v. Feinglass,* 811 F.2d 1099, 1102 (7th Cir. 1987).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis,* 118 S. Ct. 1708, 1719 (1998) (citation omitted). The constitutional provision pertinent to Miller's claim is the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney,* 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim based on inadequate conditions, the prisoner must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted).

A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition." *Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir. 2007) (some internal citations omitted). As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). As to the second element, "[t]o show deliberate indifference, the plaintiff must

demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

To be held liable, however, the official must have participated personally in the alleged wrongdoing. Liability cannot be based on a theory of vicarious liability, *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1948 (2009) ("vicarious liability is inapplicable to *Bivens* . . . suits"), or a theory of *respondeat superior. Id.* "[T]o state a cause of action under *Bivens,* the plaintiff must allege facts which show that the individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights." *Gossmeyer v. McDonald,* 128 F.3d 481, 494 (7th Cir. 1997). A government actor meets this standard when "she acts or fails to act with a deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Id.* (internal quotations omitted).

*1. Nurse Haddix.* Nurse Haddix is a medical provider but, as Miller affirms on page 40 of his deposition, had nothing to do with the bunk assignment claim. There is thus no basis on which this defendant could be found liable to Miller for any feature of the bunk assignment claim.

*2. Officer Rogers.* Although Officer Rogers is admittedly not a medical provider, a guard can still be deliberately indifferent to an inmate's medical needs if he intentionally delays or denies access to care or if he intentionally interferes with prescribed treatment. *Walker v. Benjamin,* 293 F.3d 1030, 1040 (7th Cir. 2002) (deliberate indifference extends to guards who intentionally delay or deny access to medical care or who intentionally interfere with a prisoner's prescribed treatment (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)); *see also Board v. Farnham,* 394 F.3d 469, 485 (7th Cir. 2005) (guards could be held liable for their deliberate indifference to inmate's medical needs by failing to give inmate his inhaler when it was known that he suffered from asthma).

Officer Rogers played no such role in Miller's bunk assignment. Any lower bunk assignment for Miller should have originated with the Health Services Department. Officer Rogers was not part of that Department. The lower bunk assignment should have been placed into the SENTRY database by the Health Services Department. Again, Officer Rogers had no responsibility to input a lower bunk restriction in the SENTRY system. SHU officers, including Officer Rogers, were aware of lower bunk assignments shown in the SENTRY system, but no such assignment was in place for Miller. Rogers did not disregard a lower bunk assignment shown in the SENTRY system and did not deny Miller the benefit of such an assignment made by the Health Services Department. There is no evidence from which to infer that Officer Rogers could have taken it upon himself to issue a medical restriction. The evidentiary record, even when viewed in the manner most favorably to Miller as the non-movant, does not show or support an inference that Officer Rogers intentionally delayed, denied or interfered with medically prescribed care for Miller. This leaves no evidentiary support from which a reasonable trier of fact could find that Officer Rogers was deliberately indifferent to Miller's serious medical needs. In turn, this is fatal to Miller's claim against Officer Rogers because "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citation omitted).

*3. Warden Marberry.* As a non-medical professional, Warden Marberry was entitled to rely on whatever determination was made by the Health Services Department—in other words, by medical professionals. *See Arnett v. Webster,* 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants . . . can rely on the expertise of medical personnel."); *Knight v. Wiseman,* 590 F.3d 458, 465 (7th Cir. 2009) (officers were entitled to rely on fact that prisoner had no medical work

restrictions on his record to conclude that he could work without injury). She did exactly that and Miller does not argue that Warden Marberry is liable to him because of her position in the administrative hierarchy of the FCC.

Miller argues, instead, that the personal encounter between Warden Marberry and himself placed her directly and personally in the chain of liability. The Court does not agree that the personal encounter, as Miller describes it, is sufficient to support this claim. Miller's account is comparable to a written communication which reaches a warden or similar executive. It has been recognized, though, that a senior official's receipt of a complaint about a subordinate, without more, does not make the senior official personally liable. *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir. 1982). Specifically, basing liability on the existence of letters sent to a senior official is improper because it is "inconsistent with the personal responsibility requirement for assessing damages against public officials." *Id.* (addressing 42 U.S.C. § 1983 claims); *see also Vance v. Peters,* 97 F.3d 987, 993-94 (7th Cir. 2000) (rejecting argument that "any prisoner communication to a prison official anywhere in the corrections hierarchy constitutes adequate notice to the official of a violation of the Eighth Amendment" and holding that "[t]he plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice" to alert him or her to an unconstitutional deprivation); *Farmer v. Moritsugu*, 163 F.3d 610, 615 (D.C.Cir. 1998) (noting that it is "untenable" that BOP's medical director could be "in effect, liable for all alleged mistakes in the individual diagnoses of every inmate in the BOP system, simply by virtue of an inmate's complaint").

In any event, Miller sues Warden Marberry for turning her back on him and doing nothing, but where would the communication Miller made or intended to make to Warden Marberry lead? She deferred to the medical professionals in the Health Services Department. She was entitled to

do so, and a sound system of prison management would hardly place routine medical decisions in the hands of non-medical personnel. Those professionals, in this instance, did not document Miller's medical need for a lower bunk restriction at the time pertinent to his claim. If Warden Marberry had personal involvement, it was to defer to the judgment of the personnel in the Health Services Department. That did not result in a lower bunk restriction or assignment being placed in the SENTRY system, nor even in the pertinent medical records. It would not have resulted in Warden Marberry issuing a lower bunk assignment to Miller.

   *4. Dr. Webster.* Looming in the record is Miller's assertion that in January 2009 he observed Dr. Webster take action to give him a lower bunk restriction. The Court assumes that Miller's belief in the observation is genuine, and perhaps some error occurred that prevented the lower bunk medical restriction from being placed in the SENTRY system. But it is undisputed that the SENTRY system did not contain a lower bunk restriction, a fact acknowledged by Miller. Dr. Webster is not a party to the case, and any error in data entry is not attributable to Officer Rogers or Warden Marberry. Questions bearing on "what went wrong?" are not material to the claims against Officer Rogers or Warden Marberry and thus do not foreclose the entry of summary judgment. The same is true as to why Miller did not check back with Dr. Webster or with the Health Services Department to seek replacement of the missing lower bunk medical restriction in the SENTRY system.

   **V. Conclusion**

  It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed,

"it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

"Federal courts must take cognizance of the valid constitutional claims of prison inmates." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)). Miller has not identified a genuine issue of material fact as to his claim against any of the defendants. The defendants' motion for summary judgment [dkt. 107] is therefore **granted**.

Judgment consistent with this Entry and with the ruling of August 22, 2013, shall now issue.

IT IS SO ORDERED.

Date: January 30, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Mark R. Waterfill
Email: mwaterfill@beneschlaw.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
Email: jeff.hunter@usdoj.gov